UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-21079-CIV-BLOOM/Louis

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

    Plaintiff,
v.

MIAMI-DADE COUNTY, FLORIDA,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court on Defendant Miami-Dade County, Florida's (the "County['s]") Motion to Dismiss Plaintiff's Complaint, ECF No. [11]. Plaintiff Federal National Mortgage Association ("Plaintiff" or "Fannie Mae") filed a Response, ECF No. [17], to which Defendant filed a Reply, ECF No. [18]. The Court has carefully considered the Complaint, ECF No. [1], the parties' submissions, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted.

**I.     BACKGROUND**

This is a declaratory judgment action concerning unpaid taxes owed on Lot 3, Block 5 of the Cambridge Lawns Park, 6110 Southwest 61 Street, South Miami, Florida 33143 (the "Property"). *See* Compl. ¶ 7. Fannie Mae is a government-sponsored enterprise with its principal place of business in Washington, D.C. *See id.* ¶ 1. The County is a political subdivision of the State of Florida. *See id.* ¶ 2.

On June 25, 1998, title to the Property was conveyed to Evelyn and John H. Thomas by prior owner Robin Swain. *See id.* ¶ 8. The deed was recorded on July 6, 1998 in Official Records Book 18176, Page 4860 of the public records of Miami-Dade County, Florida. *See id.* In

September 2007, Evelyn Thomas ("Thomas") executed and delivered an adjustable rate note ("Note") in favor of James B. Nutter & Company ("JB Nutter"). *See id.* ¶ 9. Thomas also executed an adjustable rate home equity conversion mortgage in favor of JB Nutter which was secured by the Property. *See id.*; *see also id.*, Ex. A, Adjustable Rate Home Equity Conversion Mortgage ("Mortgage"), ECF No. [1] 12–20.

Thomas died on June 1, 2011. *See* Compl. ¶ 10. In 2000, 11 years before her death, Thomas executed a quitclaim deed in favor of her son, Jessie J. DeWitt ("DeWitt"). *See id.* ¶ 11.; *see also id.*, Ex. B. Quitclaim Deed ("Deed"), ECF No. [101]  JB Nutter had no notice of the Deed at the time the Mortgage was executed. *See id.* The Deed was recorded on December 6, 2011. *See id.*

On May 1, 2012, JB Nutter filed an action against DeWitt and the County, styled *James B. Nutter & Company v. DeWitt,* Case No. 2012-CA-017148, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, to foreclose the Mortgage (the "Foreclosure Action"). *See id.* ¶ 12. In conjunction with the Foreclosure Action, JB Nutter recorded a Notice of Lis Pendens. *See id.* ¶ 13; *see also id.*, Ex. C, Notice of Lis Pendens, ECF No. [101] 24. The County appeared in the Foreclosure Action and filed an answer to JB Nutter's foreclosure complaint. *See id.* ¶ 14; *see also id.*, Ex. D, Answer, ECF No. [101] 26. On May 23, 2013 the court entered a final summary judgment of foreclosure ("Final Judgment") in JB Nutter's favor. *See id.* ¶ 15; *see also id.*, Ex. E, Final Judgement, ECF No. [101] 28–34.

A foreclosure sale was scheduled August 21, 2013, but DeWitt filed for bankruptcy the same day, and the sale was canceled. *See id.* ¶ 16. On September 13, 2013, DeWitt's bankruptcy was dismissed. *See id.*

On October 7, 2013, the County recorded a Notice of Tax Lien for Homestead Exemption and/or Limitation Exclusion ('Notice of Lien"). *See id.* ¶ 17; *see also id.* Ex. F, Notice of Lien, ECF No. [101] 36. The Notice of Lien names the taxpayer as "Jessie J. DeWitt" and states:

> Pursuant to the provisions of Sections 195.031, Florida Statutes, [a] homestead exemption has been allowed on the property described below and the taxpayer named below received exemption(s) for a homestead in the aggregate amount of **$35,924.67** for **2003–2012** year(s). In accordance with §196.011(9)(a); §19.161(1)(a), §196.075 and §193,155 Florida Statutes, notice is hereby given that the recipient(s) named below was not legally entitled to receive said exemption( s) or limitation(s) because said person(s) **RECEIVED EXEMPTION IN ERROR**. The statutes provide for recovery of unpaid taxes by means of a lien, including a 50% penalty and 15% Interest for any year or years within the prior 10 years from the person(s) who was not entitled [to], but [who was] granted a homestead exemption. This document shall constitute a lien on the real property specifically addressed and legally owned by said taxpayer in the State of Florida.

*Id..*

After DeWitt's bankruptcy case was dismissed, the foreclosure sale was rescheduled. *See id.* ¶ 18. Fannie Mae purchased the property on February 26, 2014 and obtained a certificate of title to the Property on March 18, 2014. *See id.*; *see also id.*; Ex. G, Certificate of Title, ECF No. [101] 38. The County continues to claim an interest in the Property by virtue of the Notice of Lien and seeks to recover over $100,000.00 in assessed back-taxes, penalties, and interest from Fannie Mae in its capacity as the Property's current owner. *See id.* ¶ 19.

This declaratory action followed. Fannie Mae seeks a declaration that (1) the "Notice of Lien is unenforceable against the Property because any claim the County may have had for unpaid taxes with respect to the Property from 2003 through 2012 that resulted from an allegedly improperly-granted homestead exemption . . . was foreclosed by the Foreclosure Action's Final Judgement[;]" (2) the Notice of Lien is unenforceable against the Property because the County "did not timely record a notice of tax lien pursuant to [section 196.161(1)(b), Florida Statutes], before the Final Judgment was entered[;]" and (3) "the County's attempts to enforce its Notice of

Lien against Fannie Mae's Property is barred by [section 48.23(d), Florida Statutes.]" Compl. ¶¶ 25–27.

The County now moves to dismiss the Complaint arguing (1) the Tax Injunction Act divests the Court of subject matter jurisdiction; (2) the doctrine of comity calls for the Court to abstain from exercising its jurisdiction; (3) Fannie Mae fails to state a claim against the County; and (4) Fannie Mae failed to join an indispensable party. *See generally* Mot. The Court finds the jurisdictional question controls the outcome of the case.

## II.  LEGAL STANDARD

The Tax Injunction Act provides "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The primary purpose of the Act was to "limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503 (1981); *see also Terry v. Crawford*, 615 F. App'x 629, 630 (11th Cir. 2015) ("The Tax Injunction Act is a jurisdictional rule and constitutes a broad jurisdictional barrier." (citation and internal quotation marks omitted)). The Act "does not confer jurisdiction, but instead limits jurisdiction which might otherwise exist." *Osceola v. Fla. Dep't of Revenue*, 893 F.2d 1231, 1232 (11th Cir. 1990) (citation omitted). "While the Act on its face bars injunctive relief, it has been judicially expanded to include suits for declaratory relief." *Id.* at 1233.

## III.  DISCUSSION

The primary issue in this case is whether the declaratory relief sought by Fannie Mae will "enjoin, suspend, or restrain a state tax assessment."[1] The County claims that it will, and therefore

---

[1] Fannie Mae "does not dispute the existence of a plain, speedy, and efficient mechanism at the state court level[.]" Resp. 7.

4

the Court lacks jurisdiction under the Tax Injunction Act. *See* Mot. ¶¶ 9–15; Reply ¶¶ 2–13. Fannie Mae takes the opposite view, arguing it "does not seek to prevent or enjoin the County from collecting [] taxes . . . [r]ather it merely seeks a declaration that — because the Lien was foreclosed or, alternatively, because it is unenforceable as against the Property due to both Fla. Stat. [section] 196.161(1)(b) and § 48.23(d) — the County needs to seek another source of collection." Resp. 8. Fannie Mae points to the former owner of the property, DeWitt, as the alternative "source." *See id.*

The Court agrees with the County.

Fannie Mae seeks a declaration the "Notice of Lien *is unenforceable against the Property*." Compl. ¶¶ 25, 28 (emphasis added). The County argues the "relief requested . . . will effectively enjoin the collection of property taxes." The County relies on *Terry. v. Crawford*, 615 Fed. App'x 629 (11th Cir. 2015), which this Court finds instructive.[2] In *Terry*, the Eleventh Circuit found it lacked jurisdiction to consider a section 1983 action challenging the reclassification of a parcel of property, which in turn resulted in an additional ad valorem tax. *See id.* 629–30. The court reasoned,

> it is clear from [the plaintiff's] complaint, despite his assertions to the contrary, that he sought to enjoin a state tax assessment. [The plaintiff] specifically requested that the federal district court remove his property from the tax rolls and enjoin [the Revenue Commissioner] from unlawfully assessing ad valorem taxes on his property. In other words, [the plaintiff] sought a federal-court order "enabling [him] to avoid paying state taxes," which is the type of case "Congress wrote the Act to address." . . . [H]owever the action is characterized, [the plaintiff] requested federal-court relief to avoid paying state taxes, which "would have operated to reduce the flow of state tax revenue," so the Tax Injunction Act applies.

---

[2] The County also relies on *Rendon v. State of Florida*, 930 F. Supp. 601, 602, 604 (S.D. Fla. 1996), which found the court lacked jurisdiction to hear a Title VII challenge to a state statute setting fees for the issuance of "exemption parking permits for disabled motorists," and reasoning the fees constituted a "tax" under the Tax Injunction Act." The Court finds *Rendon* is relevant insofar as it supports the *general* premise the Court lacks jurisdiction to consider requests that it enjoin the collection of state taxes.

*Id.* at 630. So too here. Fannie Mae has purchased the Property, which is subject to the Notice of Lien. The Court finds no distinction between Fannie Mae's request to find the Notice of Lien "unenforceable" against the property and a request, like the one in *Terry*, that the Court "enjoin" the collection of ad valorem property taxes.

*United States v. Wilson*, No. 2:04-cv-0389-DCN, 2007 WL 9753161, at *3 (D.S.C. Mar. 16, 2007), to which both parties reference, makes the point. In *Wilson*, two individuals (the "Wilsons") filed false tax returns and received a refund, with which they bought a parcel of property. *See id.* at *1. Upon discovering the scheme, the IRS filed a federal tax lien against the Wilsons personally. *See id.* The South Carolina Department of Revenue ("SCDOR") — the party contesting jurisdiction under the Tax Injunction Act— also "filed five tax liens for unpaid state taxes against the Wilsons, which applied to all property owed to them." *Id.*

The court analyzed the jurisdictional question. It first reviewed instances where the Tax Injunction Act does *not* divest a federal court of jurisdiction, noting

> The Tax Injunction Act does not apply in this case *to the extent* the United States's claim requests a determination of priority and does not question the validity of the state's lien. Resolving a priority dispute in this case would not "enjoin" or "suspend" the state's collection of a tax, but would only determine the order in which proceeds of the foreclosure sale is distributed among conflicting lien-holders. Determining priority between conflicting lien-holders, one of whom happens to be the state, does not implicate the type of meddling in the state's administration of taxes that the Act seeks to prevent.

*Id.* at *2. The court then distinguished the "priority [of liens] dispute" from cases that "attack the *validity* of a state's tax assessments and liens." *Id.* (emphasis added). Pointing to *RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indemnity. Co.*, 169 F.3d 448, 453–54 (7th Cir. 1999), the *Wilson* court noted, "[t]he Seventh Circuit held the Tax Injunction Act divested the court of jurisdiction over a receiver's claims that the state could not enforce its tax liens against property owned by the corporation in receivership." *Id.* at *3. The *Wilson* court also pointed to a Fifth Circuit decision, *Dawson v. Childs*, which found:

> In dissolving a lien on property, a federal court interferes with the state's fiscal program just as surely as if it enjoined collection or assessment of the tax itself. Indeed, if the lien affords the only means of obtaining the tax revenues due, as may often prove the case, the two issues blur into one.

665 F.2d 705, 710 (5th Cir. 1982). Applying the reasoning in *RTC Commercial Assets Trust* and *Dawson*, the *Wilson* court found "[a]n order by this court that declares the state's tax lien invalid, . . . is precisely what the Tax Injunction Act seeks to avoid." 2007 WL 9753161, at *3 (D.S.C. Mar. 16, 2007). Importantly, the court noted "[t]he state in this case has chosen to collect back taxes through liens on an individual taxpayer's property. By declaring the lien invalid, this court would directly suspend the state's ability to collect the unpaid taxes — a result prohibited by the Tax Injunction Act." *Id.*

So too here. The state "has chosen to collect [unpaid homestead] taxes *through liens on an individual taxpayer's property*." "By declaring the [notice of lien unenforceable], this [C]ourt would directly suspend the state's ability to collect the unpaid taxes[.]"

Fannie Mae argues it is not requesting the Court suspend the state's ability to collect property taxes; rather it requests the Court instruct the state to tax another "source" — DeWitt. *See* Resp. 8. Fannie Mae neglects that the Notice of Lien at issue is directed against the Property itself and merely addressed to DeWitt, the last record owner of the Property prior to the foreclosure sale. As noted, the Notice of Lien states, "this document shall constitute a *lien on the real property* specifically addressed and legally owned by said taxpayer in the State of Florida." Notice of Lien 36. In this respect, the facts at hand are indistinguishable from those in *Wilson*.

The remainder of Fannie Mae's cases on the jurisdictional issue — *Zipperer v. City of Fort Myers*, 41 F.3d 619 (M.D. Fla. 1995); *Nabers v. Mississippi State Tax Commission*, 665 F. Supp. 2d 692 (S.D. Miss. 2007); and *United States v. R & E Corp.*, No. CIV. A. 98-1068, 1999 WL 680376, at *1 (E.D. Pa. Aug. 31, 1999) — are distinguishable.

7

In *Zipperer*, the plaintiff loaned a third-party $8,900,000.00, secured by a mortgage on the property in favor of the plaintiff. *See* 41 F.3d at 621. The third-party requested the city, in which the property was located, to make several improvements on the land, which it made. *See id.* Following the improvements, the city levied special assessments on the land, but the third-party did not pay them. Thereafter, the city "filed a lien on the mortgaged property." *Id.* at 622. Approximately one year later, the plaintiff foreclosed on the land and purchased it. *See id.* He then brought an action against the city claiming "the special assessments and their lien prioritization impaired the value of his property interest without any opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment" and sought "to have the special assessments subordinated in priority to his prior recorded mortgage." *Id.*

The Court rejected the defendant city's argument that the Tax Injunction Act barred the suit, reasoning (1) the "special assessments" at issue did not constitute a tax; and (2) "the Tax Injunction Act does not bar a federal court from hearing the case where the only question is *one of lien priorities* and no one seeks to suspend the collection of state taxes." *Id.* (emphasis added; citing *Director of Revenue, State of Colorado v. U.S.*, 392 F.2d 307, 311 (10th Cir.1968)).

As correctly noted by the County, *Zipperer* is distinguishable on two points. First *Zipperer* did not concern tax liens, but special assessments, and the *Zipperer* court noted the "Florida Supreme Court has rejected the argument that special assessments are considered taxes under the Florida Constitution." 41 .3d at 622 (citation omitted). Second, *Zipperer* considered "lien priorities," *id.*, and here, there is no record evidence Fannie Mae has a lien on the Property.

*Nabers* is also inapposite. In *Nabers*, several corporate entities obtained a $5,000,000 line of credit secured by the entities' tangible and intangible assets, including accounts receivable. *See* 665 F. Supp. 2d at 694. The entities defaulted, the creditor sued, and a receiver was appointed. *See id.* Contemporaneously, the state tax commission began "issuing and serving distress warrants

to certain account debtors . . . based on alleged tax liens obtained against the [corporate entities.]" *Id.* at *694. The receiver sued the state tax commission seeking a declaration the creditor had a perfected security interest in the collateral which took "priority over any interest that the [state tax commission] may have in any of the collateral as a result of the distress warrants[.]" *Id.* at 695.

The state tax commission moved to dismiss the case for lack of jurisdiction under the Tax Injunction Act. *See id.* The receiver maintained the Act "only applies when a *taxpayer* files a federal court suit challenging the validity of a state tax which has been assessed, levied or collected from that taxpayer and seeks a federal court order that would enable the taxpayer to avoid responsibility for the subject taxes." *Id.* (emphasis in original). The court agreed, noting "third-party suits not seeking to stop collection (or contest the validity) of a tax imposed on plaintiffs are outside the scope of the [Tax Injunction Act]" and emphasizing the receiver "seeks only to limit the *source* of funds from which the taxes may be collected." *Id.* at 696–97 (emphasis added).

Like *Zipperer*, *Nabers* is distinguishable twice over. First, it too considered the priority of competing liens, *see id.* at 696 (noting, "[the receiver's] position herein is that the [state tax commission]'s efforts to satisfy the [corporate] entities' tax liability from the collateral for the entities' line of credit from [the creditor] must fail, since [the creditor]'s lien based on its prior perfected security interest in that collateral has priority over the [the tax commission]'s tax lien), and there is no record evidence Fannie Mae has a lien. Second the liens in *Nabers* were "obtained against [the corporate entities]" *id.* at 694, whereas here, the Notice of Lien states it is a "lien on the real property" and *addressed* to the owner, Notice of Lien, ECF No. [101] 36.

Moreover, *United States v. R & E Corp.* 1999 WL 680376, is also distinguishable because it concerned competing liens. There, the Government brought a foreclosure action against a liquor license owned by R & E Corporation ("R & E") and added the Commonwealth of Pennsylvania's Bureau of Employer Tax Operations ("BETO") as a party possibly claiming rights to the liquor

9

license. *See id.* at \*1. Both the Government and BETO had filed tax liens against R & E. *See id.* at \*1–2. Default was entered against R & E Corporation, the liquor license was sold, and both the Government and BETO claimed entitlement to the proceeds. *See id.* at \*1. The Government claimed its tax liens had priority over all but one of the Commonwealth's liens. *See id.* at \*4. BETO maintained that the Tax Injunction Act divests the court of jurisdiction to hear this case. *See id.* at \*1.

Consistent with the reasoning in *Zipperer* and *Nabers*, the *R & E Corp.* court found "[t]he foreclosure action simply establishes the priority of both parties' interests relative to each other. Consequently, this action does not fall within the ambit of the [Tax Injunction Act]. 1999 WL 680376, at \*3 (E.D. Pa. Aug. 31, 1999). As discussed above, the facts and legal analysis in *R & E Corp.* are not instructive here, where there is only one lien at issue.

Otherwise, Fannie Mae provides no case law supporting its claim the lien was "foreclosed" by the Foreclosure Action or the lien is otherwise unenforceable under section 196.161(1)(b) or section 48.23(d), Florida Statutes. *See* Compl. ¶¶ 25–27; Resp. 8. Indeed, these are precisely the type of arguments the *state* court should address, as they inform the *validity* of the state tax lien.

## IV. CONCLUSION

Because the Court concludes the Tax Injunction Act divests it of jurisdiction, the Court need not address the parties' remaining arguments.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant, Miami-Dade County, Florida's Motion to Dismiss Plaintiff's Complaint, ECF No. **[11]** is **GRANTED**.

2. Any pending motions are **DENIED** as moot and any scheduled hearings are **CANCELED.**

3. The Clerk shall **ADMINISTRATIVELY CLOSE** the case.

Case No. 20-cv-21079-CIV-BLOOM/Louis

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 10, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of record